IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


DAYVON COX, GY-9058, )
    Petitioner, )
     )
    v. )    2:17-cv-567
     )
SUPT. MCGINLEY, et al., )
    Respondents. )


MEMORANDUM OPINION and ORDER


Dayvon Cox an inmate at the State Correctional Institution – Smithfield has presented a petition for a writ of habeas corpus (ECF No.1). For the reasons set forth below, the petition will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

Cox is presently serving a twenty-three to fifty-four year sentence imposed on September 26, 2006 following his conviction by a jury of kidnapping, robbery, carrying a firearm without a license, terroristic threats, sexual assault, simple assault and aggravated assault with a deadly weapon at No. CC-04-CR-122-2006 in the Court of Common Pleas of Beaver County, Pennsylvania.[1]

An appeal was filed in the Superior Court in which the questions presented were:

> I. Did the trial court err when it refused to remove a juror from the jury and/or fail to conduct a hearing relative to the effect of the juror's sleeping after counsel for Appellant observed said juror sleeping and brought that issue to the trial court's attention?
>
> II. Did the trial court err when it refused to remove for cause a juror from the jury who revealed that his wife had been sexually assaulted as well as his step-children where said juror failed to reveal this fact during jury selection despite having been asked, via the questionnaire, whether anyone close to him had been the victim of a crime?

---

[1] See: Petition at ¶¶ 1-6.

III. Did the trial court err in denying Appellant's post-sentencing motion challenging the sentence imposed by the trial [court] in that the trial court abused its discretion relative to Appellant's sentence?

IV. Did the trial court err when it found Appellant to be a sexually violent predator where the Commonwealth failed to establish by clear and convincing evidence that Appellant was a sexually violent predator?[2]

On December 2, 2008, the judgment of sentence was affirmed.[3]

A post-conviction petition was filed on October 27, 2010 and denied on December 22, 2014.[4] An appeal was filed in the Superior Court in which the questions presented for review were:

I. Whether the PCRA court erred in finding that direct appeal counsel did not render ineffective assistance of counsel in violation of the 6th Amendment under the U.S. Constitution for counsel's failure to argue on appeal that the trial court abused its discretion, therein violating the appellant's Due Process rights under the 14th Amendment of the U.S. Constitution, by allowing a juror to remain on the jury after finding out that the juror was untruthful on his questionnaire and whether the inability of the appellant to have this critical withheld information made available/known to him at the time of the initial voir dire, effectively deprived the defense of its opportunity to utilize one of its peremptory challenges to have the juror removed, causing appellant to be prejudiced?

II. Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance of counsel in violation of the 6th Amendment under the U.S. Constitution for counsel's failure to argue on appeal that the trial court abused its discretion, for refusing to remove 2 jurors who had ex-parte communication with the mother and father of one of the alleged victims, causing the appellant to be denied his U.S. Constitutional right to a fair trial?

III. Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution for counsel's failure to argue on appeal that the trial court violated appellant's Due Process rights under the U.S. Constitution, 8th Amendment right to be free from cruel and unusual punishment when it abused its discretion in sentencing appellant to an

---

[2] See: Volume II of the Appendix at Tab1, p.6.
[3] See: Volume I of the Appendix at Tab.6.
[4] Id. at Tabs 7 and 10.

illegal sentence pursuant to United States v. Alleyne, 133 S.Ct. 2151 (2013)?

IV. Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution for counsel's failure to argue on appeal that the trial court abused its discretion when it allowed the Commonwealth to use its peremptory strike to exclude a juror on the basis of race, thereby violating appellant's 14th Amendment right to a fair trial under the U.S. Constitution, and 8th Amendment right to Equal Protection of the law and federal law, pursuant to Batson v. Kentucky, 476 U.S. 79 (1986)?

V. Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution when counsel did not move for appointment of a defense expert, whose testimony would have rebut[ted] the Commonwealth's psychiatric expert who condemned appellant as a psychopath and SVP?

VI. Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution when counsel failed to take steps to seek admission of evidence consisting of the victim's sexual activities with a third party, other than her paramour or one of the other codefendant's for the purpose of attacking her credibility?[5]

On November 14, 2016, the denial of post-conviction relief was affirmed.[6] Allowance of appeal was denied by the Pennsylvania Supreme Court on April 18, 2017.[7]

In the petition filed on this court on May 2, 2017[8], Cox contends he is entitled to relief on the following grounds:

1. The PCRA court erred in finding that direct appeal counsel did not render ineffective assistance … by allowing a juror to remain on the jury after finding out that the juror was untruthful…Juror lied on questionnaire when he was asked if he or any one in his family was ever a victim of a crime. He answered "no" but after he was empaneled on the jury he notified the court that he was in fact

---

[5] See: Volume II of the Appendix at Tab 9 pp.4-5.
[6] See: Volume I of the Appendix at Tab 12.
[7] Id. at Tab 14.
[8] The Commonwealth concedes that the instant petition is timely filed and that Cox has exhausted his state court remedies on the issues he seeks to raise here (ECF No.23 pp.6, 7).

3

untruthful and that his wife and step-children were victims of sexual assault. A colloquy was held by the judge who refused to remove him off of my jury panel.

2. The PCRA court erred in finding that direct appeal counsel did not render ineffective assistance … for failure to argue … that the trial court abused its discretion, for refusing to remove 2 jurors who had ex-parte communication with the mother and father of one of the alleged victims… After a day of deliberation, the mother and step father of one of the alleged victims had contact with two jury members in a parking garage without anyone from the court being present... The court questioned the two jurors but not the mother and father even after being requested that the mother and father also be allowed to be questioned.

3. Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance … when it abused its discretion in sentencing appellant to an illegal sentence pursuant to United States v. Alleyne, 133 S.Ct. 2151, when it imposed a mandatory sentence that was not brought in front of a jury and found beyond a reasonable doubt.

4. Whether the PCRA court erred in finding that direct appeal counsel did not render ineffective assistance … for counsel's failure to argue on appeal … when [the trial court] allowed the Commonwealth to use its peremptory strike to exclude a juror on the basis of race… A juror that was the 1st black juror was challenged by the prosecution but the trial court ruled in favor of the defense after defense argued that use of Commonwealth's …peremptory strike was to exclude a juror based [on] race. The next day the trial court allowed [the prosecution's] use [of] its peremptory strike to remove said juror.

5. Whether the PCRA court erred in finding that direct appeal counsel did not render ineffective assistance … when counsel did not move the court for appointment of a defense expert whose testimony would have rebut[ted] the Commonwealth's psychiatric expert… Attorney Gerald Benyo was directed by defendant to obtain an expert witness to rebut Commonwealth's psychiatric expert who condemned defendant as a psychopath and SVP. Attorney Benyo sought funds from the courts to obtain an expert witness and was granted funds but failed to find and present an expert witness who could rebut [the] Commonwealth's expert witness.

6. Whether the PCRA court erred in finding that direct appeal counsel did not render ineffective assistance … when counsel failed to take steps to seek admission of evidence consisting of the victim's sexual activities with a third party… From the outcome of DNA testing of alleged victim via rape kit, DNA of a third party outside of defendant and alleged victim's paramour. Trial counsel failed to take steps to seek admission of evidence consisting of victim's sexual activities for the purpose of attacking her credibility.

In its November 14, 2016 Memorandum, the Superior Court repeated its prior recitation of the factual background to this prosecution:

> In the prosecution of this case, the Commonwealth presented testimony from [J.M.], [M.M.] and Brandon Morgan. They testified to a meeting in East Rochester between the three (3) of them and [Appellant] and Brandon Revis. The purpose of this meeting was for Morgan to take [Appellant] and Revis to another individual who could supply them with marijuana. After reaching their destination and not finding the individual, [Appellant] pulled out a gun, struck Morgan in the head with it and forced Morgan back into the vehicle and made him drive. At this point, [Appellant] was in control of the vehicle's passengers. [Appellant] held a gun to [J.M.]'s head before again pointing the gun at Morgan. After forcing Morgan to pull into a parking lot, [Appellant] shot out the driver's window in Morgan's vehicle and asked Morgan if he thought "he was joking around". Next, [Appellant] forced Morgan to drive toward Rochester. Morgan continued driving into Monaca and [Appellant] forced Morgan, at gunpoint, out of the driver's seat and into the back seat. [Appellant] then began driving the vehicle. [Appellant] struck Morgan in the head with his gun once again and demanded any money that Morgan had with him. At this point, [Appellant] forced [J.M.] and [M.M.] to remove their clothing. Next, [Appellant] forced Morgan to withdraw three-hundred dollars ($300.00) at an ATM, while accompanied by Revis, and demanded any jewelry [J.M.] and [M.M.] were wearing. After driving to another parking lot, [Appellant] told the three (3) victims to get out of the vehicle and then forced [J.M.] to return to the vehicle and perform oral sex on him, as well vaginal sex. [Appellant] also pointed his gun at [M.M.] and forced her to perform oral sex on Brandon Morgan. After a short time [Appellant] left Morgan and [M.M.] and drove [J.M.] to an alleyway where he forced [J.M.] to engage in sexual activity with [four men in addition to Appellant] who had assembled there.
>
> Morgan and [M.M.] were able to stop Aliquippa Police Officer Donald Lane as he was responding to a possible burglary call. They

explained what had happened and a police bulletin was issue
describing Morgan's vehicle and [J.M.]. at approximately 3:45 a.m.,
Ambridge Police Officer Michael McQuaide located [J.M.] who was
then transported to Aliquippa Hospital where a medical examination
was conducted. At the hospital, [J.M.] told the investigating police
officers that Appellant forced her to perform oral sex and engage in
vaginal intercourse with him and four other men, who were later
identified as Brandon Revis, Demarkus Walker, Enrico Jackson and
Carlos Hicks. Walker subsequently stated that he and Jackson
watched Appellant rape [J.M.]. When Appellant finished with her, all
the men took turns raping and sexually assaulting her. When
Appellant was arrested, he was found to be in possession of jewelry
that belonged to [J.M.].

Appellant was charged with multiple counts of rape, involuntary
deviate sexual intercourse (IDSI), sexual assault, kidnapping,
unlawful restraint, robbery, terroristic threats, simple assault,
aggravated assault, and criminal conspiracy, and one count each of
carrying a firearm without a license and robbery of a motor vehicle.
On September 26, 2006, a jury convicted Appellant of three counts of
kidnapping, four counts of robbery, one court of sexual assault, one
count of carrying a firearm without a license, three counts of
terroristic threats, one count of simple assault and one count of
aggravated assault with a deadly weapon…The trial court ordered a
pre-sentence investigation and report. The trial court also ordered an
investigation to be conducted pursuant to Pennsylvania's version of
Megan's Law…

A Megan's Law hearing was conducted on February 7, 2007, after
which the trial court determined that Appellant is a sexually violent
predator…[9]

Thus, we address petitioner's contentions that he was denied the effective assistance of counsel at trial, issues which he contends his post-conviction appellate counsel failed to adequately address.[10] In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also

---
[9] See: Id. at Tab 12, pp.2-4.
[10] In Pennsylvania, issues of ineffective assistance of counsel are raised in post-conviction proceedings. Com. v. Bozic, 997 A.2d 1211 (Pa.Super), allowance of appeal denied 608 Pa. 659 (2010), cert. denied 131 S.Ct. 2939 (2011).

6

Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

Cox's first claim is that counsel was ineffective for failing to challenge a juror who "lied" on his jury questionnaire. This issue was addressed by the Superior Court in its post-conviction review:

> Appellant asserts direct appeal counsel was ineffective for failing to challenge the alleged misconduct of a juror, who belatedly disclosed his wife's prior sexual assault. However, the underlying claim was raised in his direct appeal and denied on its merits… Thus there is no basis to this claim of ineffectiveness.[11]

---

[11] See: Appendix Vol. I at Tab 12 p.10 where the Court cited its direct appeal Memorandum in which it wrote:

> We find that the trial court immediately informed trial counsel as soon as it learned that a problem existed. Moreover, the trial court convened a hearing at which trial counsel was permitted wide latitude to question Juror No. 3 about potential bias… Juror No. 3 stated he was "nervous" during jury selection because he had never been on a jury before. He also stated that he "wasn't even thinking" about things that happened to his wife and her children before he even met them. When specifically asked by the trial court if he thought these incidents would interfere with his ability to be fair and impartial and to decide the case based only on the evidence presented in the court room, Juror No.3 stated that he did not think it would. Furthermore, Juror No.3 indicated that the only reason he brought this matter to the attention of the court was to provide complete information, not because he was upset or thought he could not be fair. When asked if he was "absolutely certain" that he could be unbiased and fair, Juror No.3 stated, "Yes, I think I can do that. Yes." (See: Appendix Vol.1, Tab.6

7

Since counsel cannot be deemed to have been ineffective for failing to raise a meritless issue, petitioner's claim is without merit here. Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2010).

Petitioner next alleges that counsel was ineffective for failing to gain the removal of two jurors who had ex parte communications with the parents of one of the victims. Citing the post-conviction court, the Superior Court wrote:

> [Cox] asserts that on or about September 25, 2006 in the Beaver County Courthouse Parking Garage, the stepfather of the victim, who was not a witness in the trial, and a Beaver County Victim Advocate, who was also not a witness in the trial, assisted two Jurors with obtaining a jump for a dead automobile battery around 5:30 p.m..... [Appellant] contends that these two particular Jurors, Nos. 5 and 8, could clearly have identified the "allegiance" of the two individuals who assisted them that evening because they were in fact, White or Caucasian, and the victim's family was entirely Caucasian, while the [Appellant]'s family was entirely Black or African American. [Appellant] claims this identification based solely on race of the parties involved, as well as the time and manner of the contact in the garage makes for a situation where the jurors involved would likely be prejudiced against [Appellant]…
>
> Upon questioning by counsel and the Court …Juror No.5 stated that she did not know the individuals who assisted her, had never seen the individuals, nor was anything about the trial discussed with these two individuals. Juror No. 5 answered that nothing that transpired in the garage would affect her ability to view and decide the case… Juror No. 8 was questioned similarly and responded that she did not know these two individuals to be associated with the trial, nor could she identify them and that nothing was said relating to this trial or deliberations…
>
> In this case, the facts do not present a situation where an event can reasonably be said to have deprived [Appellant] of a fair and impartial trial. The Jurors did not know the individuals with whom they came in contact, they could not ascertain any involvement of those individuals with the trial, no such contact related to the trial, no conversations were had involving the trial, and both Jurors stated that nothing that transpired would affect their ability to continue as members of the

---

pp.18-19. This factual determination is presumed correct here. 28 U.S.C. § 2254(e)(1).

> Jury… Trial counsel was not ineffective for failure to pursue this issue on appeal…[12]

This factual determination is likewise presumed correct here. 28 U.S.C. § 2254(e)(1) and as a result counsel cannot be deemed to have been ineffective for failure to raise the meritless issue. Real v. Shannon, supra.

Cox's third issue is that counsel was ineffective for failing to object to the sentence imposed in violation of Alleyne v. United States, 570 U.S. 99, 107-108 (2013) which in reliance on Apprendi v. New Jersey, 530 U.S. 466 (2000) held that "a fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed." Specifically, he alleges that the mandatory minimum sentence of five years for possession of a firearm during a crime of violence provided for in 42 Pa.C.S.A. § 9712(a) imposes a sentence in violation of Alleyne.

In reviewing this claim, the Superior Court wrote:

> The Pennsylvania Supreme Court recently held "Alleyne does not apply retroactively to cases pending on collateral review" … Instantly, Appellant's sentence became final on February 3, 2010, after … the period to petition the United States Supreme Court for a writ of *certiorari*, expired. Alleyne was decided on June 17, 2013, more than three years after appellant's sentence became final. Therefore, there is no merit to Appellant's argument that Alleyne should apply retroactively and render his sentence illegal for the purpose of collateral review.

That is, the courts of Pennsylvania concluded that Alleyne was not to be retroactively applied to cases which were final before that decision. In the instant case, while the petitioner was sentenced to a mandatory minimum five year sentence on the two robbery counts on which he was convicted. Robbery as defined in 18 Pa.C.S.A. § 3701 is a theft with a threat of violence and is a second degree felony subject to a period of imprisonment of up to ten years, 18 Pa.C.S.A. § 1103(2).

In United States v. Winkelman, 746 F.3d 134 (3d Cir. 2014) the Court of Appeals likewise held that Alleyne is not retroactively applied to cases on collateral review. See also: Cruz v. Glunt, 2016 WL 4487015 at *5 (M.D. Pa. Aug. 25, 2016)

---

[12] Id. at pp. 13-15.

("Every Circuit has held that Allenye is not retroactive to cases on collateral review" (citing cases)).

As a result, counsel cannot be deemed to have been ineffective for failure to raise the meritless issue. Real v. Shannon, supra.

Petitioner's fourth claim is that a black juror was excluded by the Commonwealth in violation of Batson v. Kentucky, 476 U.S. 79, 86 (1986) ("purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denied him the protection that a trial by jury is intended to secure").

The Superior Court summarized this issues as follows:

> Appellant's claim arises out of the striking of a Black female juror… seated as Juror 12. When completing the juror questionnaire, the prospective juror indicated "yes" when asked whether she would have a problem following the court's instruction when the defendant does not testify. During further examination, the prospective juror indicated that she would able to follow the court's instructions. The prospective juror also stated that she did not know Appellant personally, but knew some of his family members, specifically, the prospective juror owned a shop in Aliquippa, and Appellant's aunt owned the store next door approximately two year earlier. The prospective juror discovered Appellant's aunt and Appellant were related when the juror read the newspaper and then talked to her mother-in-law. The prospective juror stated that she saw Appellant's aunt in court that day and felt "nervous." However, she maintained it would not be uncomfortable for her to find Appellant guilty and return to the community. The prospective juror was also a distant relative of one of the co-defendants who testified against Appellant.[13]

The Commonwealth's motion to strike for cause was denied, and as a result the Commonwealth indicated that it would exercise a peremptory strike. The trial court sustained petitioner's objection and the juror was seated. However, the next day the trial court reversed its earlier decision and permitted the peremptory strike of the black juror concluding that the prosecution's explanation of the basis for its striking the juror "clearly not in any way, shape or form, related to race."[14]

As required by the Batson analysis, the striking of a juror was determined to be racially neutral. Clearly, there was a non-racially motivated legitimate basis for the prosecutor's use of a

---

[13] Id. at pp. 16-17.
[14] Id. at pp. 17-18.

10

peremptory strike, and this factual determination by the trial court is entitled to a presumption of correctness if supported by the record, as is the case here. 28 U.S.C. § 2254(e)(1). Accordingly, this claim does not provide a basis for relief and counsel cannot be deemed to have been ineffective in the manner of challenging the strike.

Petitioner's next claim is that trial counsel was ineffective in failing to secure the services of an expert to counter the testimony of the Commonwealth's psychiatrist who appeared at the sexually violent predator hearing. Following Cox's conviction on September 26, 2006, the trial judge conducted a Megan's Law hearing on February 7, 2007, determined that the petitioner was a sexually violent predator and imposed his sentence. In petitioner's direct appeal, the Superior Court observed that:

> [T]he trial court conducted a Megan's Law hearing at which it determined that Appellant is a sexually violent predator. The record shows that, at the hearing, the trial court possessed and consulted a pre-sentence report, as well as victim impact statements. Three witnesses spoke on Appellant's behalf. Appellant addressed the trial court at length during the Megan's Law hearing, at which time he apologized to the victims and made a statement on his own behalf, the trial court heard argument by trial counsel and by the prosecutor. [After imposing sentence other conditions were imposed including] (4) This Court finds [Appellant] to be a "Sexually Violent Predator" as that term is defined at Act 18 of 2000 (Megan's Law), and therefore, [Appellant] is required to lifetime reporting and counseling as mandated by the Act.[15]

The Court continued:

> The statute specifically details the process by which an individual is determined to be a [sexually violent predator]. After a defendant is convicted of an offense specified in section 9795(1), the trial court must order the State Sexual Offenders Assessment Board to assess the defendant for the appropriateness of an SVP classification…
>
> The Commonwealth bears the burden of proving that a defendant is an SVP by "clear and convincing" evidence…
>
> The required SVP hearing was conducted in this case on February 7, 2007. At the hearing, testimony was presented by Paul M. Bernstein, Ph.D., Director of Pennsylvania Psychological Service …He … explained his reasons for concluding that Appellant met the diagnostic criteria for antisocial personality disorder as defined …Dr. Bernstein

---

[15] See: Appendix Volume I, Tab 6 pp.24-26.

> concluded that Appellant engaged in predatory behavior, as defined
> by statute, and that he demonstrates/satisfied all seven criteria that
> apply to a diagnosis of antisocial personality disorder… Specifically,
> Dr. Bernstein diagnosed Appellant as a psychopath, based on the time
> he spent with Appellant…
>
> After Dr. Bernstein was excused, Appellant testified on his own
> behalf. Appellant explained certain factual discrepancies he found in
> Dr. Bernstein's report. Appellant also called other witnesses to testify
> on his behalf…[16]

As a result, the Superior Court concluded that the Commonwealth had presented sufficient "clear and convincing" evidence to meet its burden.

Now, petitioner seeks to raise this issue in the context of ineffective assistance of trial counsel in failing to call a witness to rebut Dr. Bernstein. While the Superior concluded that this issue is not properly raised in a post-conviction petition but rather should have been raised on direct appeal, it also wrote, "challenges to the process by which an SVP determination was reached including claims that trial counsel should have obtained a rebuttal expert, were not cognizable under the PCRA…Appellant has not established that a rebuttal expert would be available and willing to contradict the Commonwealth's expert…The mere failure to obtain an expert rebuttal witness is not ineffectiveness… Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause." [17](citation omitted). That is, the issue should have been raised as a merits issue in the direct appeal. However, the issue was not raised in the direct appeal and is procedurally defaulted and not properly raised here.

In <u>Coleman v. Thompson</u>, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claim will result in a fundamental
> miscarriage of justice.

Because no such showing is made here, the petitioner has procedurally defaulted in invoking the then available state court remedies on these issues and no further consideration of these issues is

---

[16] Id. at pp. 30-35 (internal citations omitted).
[17] See: Appendix Volume I Tab 12 at p.11 and fn. 7.

warranted here. Additionally, no showing is made here, that such a witnesses was even available to testify.

Cox's final argument is that counsel was ineffective in failing to introduce evidence of the victim's prior sexual activities with third parties. Specifically, he contends that

> Counsel filed to take steps to seek admission of evidence consisting of the victim's sexual activities with a third party, other than her paramour or one of the other codefendant's for the purpose of attacking her credibility.

Pennsylvania's Rape Shield Law provides in 18 Pa.C.S.A. § 3104(a) that:

> Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue…

In <u>Commonwealth v. Burns</u>, 988 A.2d 684, 689 (Pa.Super. 2009), the Court wrote that the purpose of §3104 is to "prevent trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim…" With this background, the Superior Court in the instant case concluded that:

> The mere fact that J.M. may have had sex with an unrelated party without her then-boyfriend's knowledge provides little insight into the specific event surrounding the sexual offenses for which Appellant was on trial. Additionally, it would not explain away the Commonwealth's theory of the case that J.M. did not consent to the sexual activity given Appellant's course of conduct that night.[18]

Thus, once again we conclude that counsel cannot be deemed to have been ineffective in failing to raise a meritless issue. <u>Real v. Shannon</u>, <u>supra.</u>

Because petitioner has failed to make any showing that his conviction was secured in any manner contrary to the determinations of the Supreme Court nor that in involved any unreasonable application of those determinations, he is not entitled to relief here. Accordingly, the petition of Dayvon Cox for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

---

[18] Id. at p.24.

An appropriate Order will be entered.

s/ Robert C. Mitchell
United States Magistrate Judge

Filed: September 28, 2018.

ORDER

AND NOW, this , day of August, 2018, for the reasons set forth in the foregoing Memorandum Opinion, the petition of Dayvon Cox (ECF No.1) is DISMISSED, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

s/ Robert C. Mitchell
United States Magistrate Judge